IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN R. SCHRUBB, | No. C-08-2986 TEH (PR) |
| Plaintiff, | ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AFTER REMAND |
| v. | |
| JAMES TILTON, SECRETARY, et. al., | (Doc. #58) |
| Defendants. | |

I

On June 2, 2008, Plaintiff, a California prisoner currently incarcerated at California Men's Colony, filed this pro se civil rights action under 42 U.S.C. § 1983 alleging that officials at Pelican Bay State Prison (PBSP) violated his constitutional rights while he was incarcerated at that facility.  Specifically, Plaintiff alleged he was deprived of several items of personal property he ordered from prison-approved vendors, including a cap and a pair of shorts, and two children's books he ordered for his toddler son that inadvertently were sent to him in prison. Plaintiff alleged this deprivation of property violated his right to due process.  Plaintiff also alleged an equal protection violation.

On March 29, 2010, the Court issued an Order Granting Defendants' Motion to Dismiss and for Summary Judgment.  Doc. #42.

On the same day, the Court entered judgment in favor of Defendants. Doc. #43. Plaintiff appealed and, on May 10, 2013, the Ninth Circuit issued an Order affirming the judgment except for one claim which was reversed and remanded. Doc. #50.

The Ninth Circuit held that Plaintiff had filed two grievances with respect to his cap and shorts--(1) a grievance regarding the prison's mail-out policy as applied to the cap and shorts, and (2) a grievance regarding the destruction of the cap and shorts--and that it was an abuse of discretion for this Court to treat these grievances as one when analyzing whether Plaintiff had exhausted them.

The Ninth Circuit directed that, on remand, even if the Court found that the mail-out claim was exhausted, it should determine whether the property destruction grievance was properly exhausted or subject to improper screening. The Ninth Circuit noted that, in regard to the property destruction grievance, there was no evidence that Plaintiff had received notice that his cap and shorts had been destroyed.

The Court issued an Order for briefing after remand. Thereafter, Defendants filed a motion for summary judgment. Rather than addressing exhaustion of Plaintiff's due process claim based on the destruction of his cap and shorts, Defendants address the merits of the claim and move for summary judgment on the ground that there are no material facts in dispute and therefore they are entitled to judgment as a matter of law. Defendants argue in the alternative that, assuming their actions are found to be unconstitutional, it

2

would not have been clear to a reasonable official that such conduct was unlawful and that therefore they are entitled to qualified immunity.[1]  Plaintiff has filed an opposition, and Defendants have filed a reply.

## II

The following facts are undisputed unless otherwise noted.

### A

On or around August 23, 2005, Plaintiff received a knit cap and shorts he had ordered through the mail from a prison-approved vendor.  Doc. #1 at 10.  The shorts were several sizes too small.  Id.  Plaintiff was informed by a staff member that the knit cap was no longer allowed.  Id. at 10 & 25.  Plaintiff elected to send both items back to the vendor.  Id.

On September 9, 2005, in response to Plaintiff's inquiry regarding the status of the items, Plaintiff was informed that he did not have sufficient funds in his prison account ($6.00) to return the items to the vendor.  Doc. #1 at 28.

On September 22, 2005, Plaintiff informed PBSP that he was unable to obtain the $6.00 needed to return the items.  Doc. #1 at 30.  He asked to be notified of any decision to destroy the items. Id.

On November 15, 2005, Plaintiff sent PBSP officials

---

[1] Defendants also filed a motion to dismiss the remaining due process claim as against individual defendants Tilton, Horel, and Yax on the grounds that Plaintiff failed to show a causal connection between them and the alleged due process violation.  As set forth below, the Court finds that Defendants are entitled to summary judgment on Plaintiff's remaining claim, thereby obviating the need to address the motion to dismiss.

3

sixteen postage stamps and asked them to return the items for him. Doc. #1 at 32.

On December 2, 2005, PBSP officials informed Plaintiff that, per PBSP Operational Procedure No. 806, they were unable to use postage stamps to return the items and explained that "all items must go out via [United Parcel Service] for tracking purposes." Doc. #1 at 34.

On December 20, 2005, Plaintiff informed PBSP officials that due to his indigency, he was unable to pay for United Parcel Service shipping to return the items to the vendor. Doc. #1 at 36. PBSP officials suggested that Plaintiff get someone to supply him with funds, which is the way Plaintiff was able to receive his quarterly package. Id. Plaintiff responded that "the person who provide[s] me with quarterly packages will not send me any funds, as my account will bear out, because I have shown a propensity to misuse my money." Id. at 38 (emphasis in original). In the same correspondence, Plaintiff asked if he could use his "indigent envelopes as payment." Id. On January 5, 2006, staff advised him that he could not. Id.

In letters dated January 10, 2006, March 28, 2006, and June 3, 2006, Plaintiff again asked to be provided with notice before PBSP destroyed the property. Doc. #1 at 42, 44, 57.

On June 4, 2006, Plaintiff submitted a CDCR form 602 Inmate/Parolee Appeal Form grieving PBSP's refusal to allow him to return the knit cap and shorts using United States Postal Service postage stamps ("mail-out appeal"). Doc. #1 at 60.

4

On June 13, 2006, the PBSP appeals coordinator screened out Plaintiff's appeal, checking a box that noted the appeal "exceeds the 15 working days time limit, and the inmate has failed to offer a credible explanation as to why he could/did not submit the appeal within the time limit." Doc. #1 at 59. The appeals coordinator also included a handwritten note that read: "You were told you could not mail out property with $6.00 [in] Jan. 2006." Id.

On August 28, 2007, PBSP officials notified Plaintiff that the thirty-day waiting period on his disallowed property, which had been in PBSP storage since November 2006, had expired, and that his property was destroyed on March 19, 2007 in accordance with PBSP/CDCR policy. Doc. #1 at 14, 73.

On September 8, 2007, Plaintiff submitted a CDCR form 602 Inmate/Parolee Appeal Form grieving PBSP's disposal of his disallowed property ("property destruction appeal"). Doc. #1 at 75.

On September 10, 2007, the PBSP appeals coordinator screened out Plaintiff's appeal, explaining:

> There has been too great a TIME LAPSE between when the action or decision occurred and when you filed your appeal with no explanation of why you did not or could not file in a timely fashion. Time limits expired per CCR 3084.6(c). Therefore, if you would like to pursue this matter further, you must submit an explanation and supporting documentation explaining why you did not or could not file your appeal timely.
>
> YOUR "ISSUE" OF DISALLOWED PROPERTY BEGAIN ON 1-10-06. THE FACT THAT YOU WERE RECENTLY NOTIFIED OF ITS DISPOSITION DOES NOT PROVIDE YOU WITH A NEW APPEAL ISSUE AND/OR NEW APPEAL TIME CONSTRAINTS.

5

Doc. #1 at 79.

**B**

Plaintiff received a copy of PBSP Operational Procedure No. 806 and read it before he ordered his shorts and cap from the vendor. Doc. #32 at 59. Operational Procedure No. 806 provides, in relevant part:

> **Personal Property Package Vendor Criteria**
>
> . . . .
>
> PBSP/CDCR shall not be a part of any discrepancies between the vendor and the purchaser. The vendor is responsible to correct any errors in package contents. When an incorrect item is received in a vendor package, CDCR staff shall verify and may contact the vendor to request a UPS call tag in order to ship the incorrect item back to the vendor.
>
> A verified copy of the shipping invoice shall be maintained in the corresponding inmate's property file in order to assist in the resolution of any disputes between the vendor and the purchaser. <u>However, all disputes are solely between the purchaser and the vendor and must be settled without additional involvement of PBSP and/or CDCR.</u>
>
> . . . .
>
> **Processing Disapproved Property**
>
> Unauthorized inmate property, . . . shall be disposed of in accordance with the provisions of this section.
>
> . . . .
>
> 3.  Mail Out
>
> <u>At the inmate's expense</u>, send the property to an agreeable correspondence via UPS. This option is not available for inmates with insufficient funds in their trust account.

6

> 4. Appeal
>
> File a [CDCR] 602, Inmate/Parolee Appeal Form. Should the inmate desire to appeal, which is one of the options, they must annotate and sign the agreement form/Property Disposition form to secure the right to appeal. Should an inmate refuse to sign an agreement form indicating one of the above choices, two officers/witnesses shall document the refusal on a [CDCR form] 128-B.

Doc. #24 at 5, 24-25 & 33 (PBSP Operational Procedure No. 806, Sections VI. K & Y (emphasis added)).

An inmate with excess or non-permitted property may voluntarily submit his property to prison officials for shipping. Ducart Decl., Doc #24, at 2. The inmate must sign a "trust account withdrawal form" to pay for the shipping costs. Id. A thirty-day hold is placed on the inmate trust account to allow the inmate time to obtain the necessary funds to pay the shipping costs. Id. If the funds are not available after thirty-days, the property is disposed of or donated. Id.

Currently, PBSP uses FedEx as the common carrier to ship inmates' personal property. Id. At the time Plaintiff sought to ship his items, PBSP used UPS to ship inmates' personal property. Id. PBSP requires inmates to use a common carrier because the common carrier identifies each parcel with a tracking number without additional charge. Id. The tracking number permits PBSP to determine if the parcel was received by the addressee. Id. Without the tracking number, an inmate or addressee could claim that a parcel was never delivered when it had been. Id. at 2-3.

### III

#### A

Summary judgment is properly granted when no genuine disputes of material fact remain and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law.  Fed. R. Civ. P. 56(c); <u>Celotex v.Catrett</u>, 477 U.S. 317, 322-23 (1986); <u>Eisenberg v. Ins. Co. of N. Am.</u>, 815 F.2d 1285, 1288-89 (9th Cir. 1987).  The moving party bears the burden of showing there is no material factual dispute. <u>Celotex</u>, 477 U.S. at 331.  Therefore, the Court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material.  <u>Id.</u> at 324; <u>Eisenberg</u>, 815 F.2d at 1289.  The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought.  <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986); <u>Intel Corp. v. Harford Accident & Indem. Co.</u>, 952 F.2d 1551, 1559 (9th Cir. 1991).

The moving party bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. <u>Celotex</u>, 477 U.S. at 323.  If the moving party meets its burden of production, the burden then shifts to the opposing party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists."  <u>Bhan v. NME Hosps., Inc.</u>, 929 F.2d 1404, 1409 (9th Cir 1991), <u>cert. denied</u>, 502 U.S. 994 (199); <u>Nissan fire & Marine Ins. Co. v. Fritz Companies, Inc.</u>, 210

8

F.3d 1099, 1105 (9th Cir. 2000).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. The substantive law will identify which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Questions of fact regarding immaterial issues cannot defeat a motion for summary judgment. Reynolds v. County of San Diego, 84 F.3d 1162, 1168-70 (9th Cir. 1996), rev'd on other grounds by Acri v. Varian Associates, Inc., 114 F.3d 999 (9th Cir. 1997). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Anderson, 477 U.S. at 248.

B

1

In his Complaint, Plaintiff alleges that PBSP officials violated his right to due process when they confiscated his cap and shorts. In their pending motion for summary judgment, Defendants argue that, because California prison regulations limit a prisoner's right to possess property while in prison, Plaintiff had no right to possess the cap and shorts in the first place, and that therefore they are entitled to summary judgment as a matter of law on his due process claim.

Prisons often ban or limit inmates' possession of certain types of personal property while incarcerated. The Constitution itself does not confer specific property interests. See Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972). A

9

property interest that has been initially recognized and protected by state law may be protected under the Due Process Clause of the Fourteenth Amendment, however. See Paul v. Davis, 424 U.S. 693, 710 (1976); Roth, 408 U.S. at 577 (protected property interests "stem from an independent source, such as state law -- rules or understandings that secure certain benefits and support claims of entitlement to those benefits."). To assert such an interest, there must be a "legitimate claim of entitlement to it." Id.

State law creates a "legitimate claim of entitlement" when it "imposes significant limitations on the discretion of the decision maker." Braswell v. Shoreline Fire Dep't, 622 F.3d 1099, 1102 (9th Cir. 2010) (citation and internal quotation marks omitted). In other words, state law may create a protected property interest that may not be withdrawn without procedural safeguards only if mandatory language in the law substantively restricts the discretion of state officials. See Hewitt v. Helms, 459 U.S. 460, 472 (1983); see, e.g., Castle Rock v. Gonzales, 545 U.S. 748, 755-66 (2005) (finding no protected property interest in enforcement of restraining orders in part because relevant provisions of state law did not truly make enforcement of restraining orders mandatory); Bugler v. U.S. Bureau of Prisons, 65 F.3d 48, 50 (5th Cir. 1995) (finding no protected property interest in inmate UNICOR job assignments); Lyon v. Farrier, 730 F.2d 525, 527 (8th Cir. 1984) (no protected interest in property designated by prison as contraband); Arney v. Simmons, 923 F. Supp. 173, 177 (D. Kan. 1996) (no property interest in inmate benefit fund).

1      Hewitt's mandatory-language methodology may not apply to
2 property interest claims by prisoners any longer.  In Sandin v.
3 Conner, 515 U.S. 472, 477-84 (1995), the Supreme Court expressly
4 rejected Hewitt's methodology in the context of prison liberty
5 interests.  It held that a prisoner is entitled to procedural due
6 process only if the restraint on his liberty of which he complains
7 imposes "atypical and significant hardship on the inmate in relation
8 to the ordinary incidents of prison life."  Id. at 484. Courts are
9 split on whether the rationale of Sandin should be extended to
10 property interest claims arising from prison conditions.  Compare
11 Cosco v. Uphoff, 195 F.3d 1221, 1224 (10th Cir. 1999) (extending
12 Sandin's atypical-and-significant-deprivation methodology to
13 property claims by prisoners) and Abdul-Wadood v. Nathan, 91 F.3d
14 1023, 1025 (7th Cir. 1996) (suggesting that Sandin applies to
15 property interest claims brought by prisoners) with Bugler v. U.S.
16 Bureau of Prisons, 65 F.3d 48, 50 (5th Cir. 1995) (declining to
17 extend Sandin's methodology to property interest claims by
18 prisoners) and Woodard v. Ohio Adult Parole Auth., 107 F.3d 1178,
19 1182-83 (6th Cir. 1997) (noting that "the Supreme Court has made it
20 clear that both state law and the Due Process Clause itself may
21 create [a liberty] interest," while the prevailing doctrine
22 instructs that "state law controls as to the existence of a property
23 interest").
24      The United States Court of Appeals for the Ninth Circuit,
25 in two unpublished decisions, has suggested opposite results.
26 Compare Martin v. Upchurch, 67 F.3d 307 (9th Cir. 1995) (concluding

11

1  prisoner had no property interest in his prison job because state
2  law left prisoners' employment to discretion of prison officials)
3  (unpublished disposition) with <u>Emil v. Crawford</u>, 125 F. App'x 112,
4  112-13 (9th Cir. Feb. 16, 2005) (citing <u>Sandin's</u> "atypical and
5  significant hardship" language, the district court's dismissal of
6  prisoner's action was proper "because his allegations--that he was
7  charged for prescription drugs, including drugs he did not receive,
8  that he was required to pay for copies, . . . and that he was denied
9  canteen privileges--do not state a constitutional claim.")
10 (unpublished disposition). However, unpublished opinions by the
11 Ninth Circuit have no precedential effect. <u>See</u> 9th Cir. R. 36-3.

12      Because it is not clear from existing case law whether the
13 rationale of <u>Hewitt</u> or <u>Sandin</u> should be applied to property interest
14 claims arising from prison conditions, the Court will evaluate
15 Plaintiff's claim under both standards.

16      Under <u>Hewitt</u>, state law may create a protected property
17 interest that may not be withdrawn without procedural safeguards
18 only if mandatory language in the law substantively restricts the
19 discretion of state officials. <u>See</u> <u>Hewitt</u>, 459 U.S. at 472; <u>Bugler</u>,
20 65 F.3d at 50 (no property interest in inmate UNICOR job
21 assignments); <u>Lyon v. Farrier</u>, 730 F.2d 525, 527 (8th Cir. 1984) (no
22 protected interest in property designated by prison as contraband);
23 <u>Owens v. Ayers</u>, 2002 WL 73226, at *2 (N.D. Cal. Jan. 15, 2002) (no
24 protected interest to property in prison in California); <u>Arney v.</u>
25 <u>Simmons</u>, 923 F. Supp. 173, 177 (D. Kan. 1996) (no property interest
26 in inmate benefit fund). In California, Plaintiff does not have a

**12**

general right to possess property in prison. California Code of Regulations, title 15, section 3192 provides that "[a]n inmate's right to inherit, own, sell or convey real or personal property does not include the right to possess such property within the institutions/facilities of the department." 15 C.C.R. § 3192 (2005). Several other sections of title 15 of the California Code of Regulations further limit a prisoner's rights to personal property, including canteen, mail, and library privileges. <u>See, e.g.</u>, 15 C.C.R. §§ 3090 et seq. (canteen privileges); §§ 3120 et seq. (library access); §§ 3130 et seq. (outside mail). Finally, PBSP Operational Procedure 806 specifically allows for disposal of property for which an inmate cannot pay shipping costs. Plaintiff does not cite any state law or prison regulation that authorizes or entitles him to possess personal property in prison.[2] Therefore, Plaintiff does not have a legitimate claim of entitlement to possess personal property in prison. Without such a property interest,

---

[2] Plaintiff asserts that, with regard to the cap, PBSP was required to provide him with a Notification of Disapproval Form pursuant to Operational Procedure 806, VI, C, 4. Doc. #76 at 7. This provision, however, only applies to disapproved books and publications. <u>See</u> Doc. #76 at 27. With regard to the shorts, Plaintiff asserts that PBSP was required to contact the vendor and request a UPS call tag in order to ship the item back at no cost to the inmate, pursuant to Operational Procedure 806, VI, K. Doc. #76 at 7. To the contrary, this provision, which is copied above in relevant part, states that staff "may" contact a vendor, but makes explicit that PBSP "shall not be a part of any discrepancies between the vendor and the purchaser" and that "all disputes are solely between the purchaser and the vendor and must be settled without additional involvement of PBSP and/or CDCR." <u>See</u> Doc. #76 at 43-44. Inexplicably, Plaintiff attaches several of the aforementioned portions of the California Code of Regulations and PBSP Operational Procedures to his opposition papers, which directly refute his argument that he has any claim of entitlement. <u>See</u> Doc. #76 at 24-84.

13

Plaintiff's due process claim based on a property interest fails as a matter of law.

Plaintiff's claim also fails as a matter of law under the <u>Sandin</u> analysis because PBSP's Operational Procedure, which imposes limited restrictions on an inmate's right to possess certain types of property, does not amount to an atypical or significant hardship as a matter of law. See <u>Rahman X v. Morgan</u>, 300 F.3d 970, 973-74 (8th Cir. 2002) (no due process claim for deprivation of television, certain property, access to commissary and restrictions on outdoor exercise for twenty-six months); <u>Cosco v. Uphoff</u>, 195 F.3d 1221, 1224 (10th Cir. 1999) (new prison regulation which limited the type and quantity of individual property in cells was not an atypical, significant deprivation); <u>Frazier v. Coughlin</u>, 81 F.3d 313, 317 (2d Cir. 1996) (loss of commissary, recreation, package, and telephone privileges did not amount to an atypical and significant deprivation); <u>Bales v. Ault</u>, 2004 WL 42647, at *6-7 (N.D. Iowa Jan. 8, 2004) (deprivation of electric razor not atypical); <u>Owens v. Ayers</u>, 2002 WL 13226, at *5 (N.D. Cal. Jan. 15, 2002) ("Under <u>Sandin</u>, separating an inmate from his property for a mere three months would not amount to an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."); <u>Warren v. Irvin</u>, 985 F. Supp. 350, 353 (W.D.N.Y. 1997) (denial of telephone, packages, commissary, earphones, movies, television, and third shower "does not represent the type of deprivation which could reasonably be viewed as imposing atypical and significant hardship on an inmate"). Again, to be clear, Plaintiff was deprived of a cap

14

and shorts. Given that deprivations of substantially larger property interests have been upheld under Sandin, the property loss at issue here plainly was not atypical or significant.

In sum, because Plaintiff did not have a possessory right to his shorts or cap while in prison, he was not entitled to due process, and Defendants are therefore entitled to summary judgment on this ground alone.

2

Even assuming a right that could be protected through the Due Process Clause, Plaintiff received all the process that would be due. The fundamental requirements of procedural due process are notice and an opportunity to be heard before the government may deprive a person of a protected interest. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985). The Ninth Circuit's decision in Nev. Dep't. of Corrections v. Greene, 648 F.3d 1014 (9th Cir. 2011) is on point. In Greene, the Nevada Department of Corrections changed its policy, which change created a ban on inmate possession of typewriters. Id. at 1017. The ban was system-wide, and all inmates were notified of the new policy. Id. Inmates had the choice of shipping the typewriters out of the prison, donating the typewriters, or destroying them. Id. Even though the plaintiff inmate in Greene was not given an individual pre-deprivation hearing, the Ninth Circuit found that his due process rights were not violated because he had been notified of the ban and given ample time to comply with it. "With respect to the personal property of prisoners, that is all the process that is due." See id. at 1019;

15

1  see also Wolff v. McDonnell, 418 U.S. 539, 556 (1974) ("[T]he fact
2  that prisoners retain rights under the Due Process Clause in no way
3  implies that these rights are not subject to restrictions imposed by
4  the nature of the regime to which they have been lawfully
5  committed.").

6  Here, it is undisputed that Plaintiff had knowledge of
7  PBSP Operational Procedure 806 and that he knew the shorts and cap
8  would be destroyed if he did not pay the shipping costs within
9  thirty days of submitting the items for shipment. As discussed
10 above, Plaintiff admits he received a copy of Operational Procedure
11 806 and read it before even ordering the shorts and cap. As also
12 discussed above, when an inmate submits property for shipping, he is
13 notified of the shipping costs, and a thirty-day hold is placed on
14 the inmate's trust account to allow time to obtain the necessary
15 funds. If the funds are not available after thirty days, the
16 property is disposed of or donated. Here, Plaintiff asked to be
17 notified of any decision to destroy the items in his September 22,
18 2005 letter. In his January 10, March 28, and June 3, 2006 letters,
19 Plaintiff again inquired whether the shorts and cap had been
20 destroyed. These letters show that Plaintiff knew the shorts and
21 cap were subject to disposal.

22 Further, Plaintiff had ample time to pay the $6.00
23 shipping fee in accordance with Operational Procedure 806.
24 Plaintiff sought to return the property on or around August 23,
25 2005. On September 9, 2005, PBSP informed Plaintiff that he did not
26 have sufficient funds. On December 2, 2005, PBSP informed Plaintiff

**16**

that the prison was unable to use his postage stamps to return the items. On December 20, 2005, staff advised Plaintiff to seek funds from another person. On January 5, 2006, Plaintiff was again advised that he could not use postage to send out the items. Ultimately, the shorts and cap were not destroyed until March 19, 2007, nearly nineteen months after Plaintiff sought to return them to the vendor. This is far beyond the thirty days provided by Operational Procedure 806.

In sum, Plaintiff had advance notice that the shorts and cap were subject to destruction and had ample time to comply with Operational Procedure 806 if he wanted the items shipped out. This is all the process he was due. See Greene, 648 F.3d at 1019.

Indeed, although not required by Greene, Plaintiff also had an opportunity to be heard through the inmate grievance process before the items were destroyed. In California, inmates may administratively appeal "any policy, decision, action, condition, or omission by the department or its staff." 15 C.C.R. § 3084(a). Plaintiff could have filed a grievance concerning prison policy relating to the confiscation and mail-out requirements as soon as he submitted them for return to the vendor on August 23, 2005. Instead he waited until June 4, 2006 to submit his mail-out appeal. This was screened out as untimely. In sum, although he failed to properly utilize the grievance process, the process was available to him and offered him the opportunity to be heard before the property

17

was destroyed.[3]

Accordingly, Defendants are entitled to summary judgment on Plaintiff's remaining due process claim.

## C

Defendants argue, in the alternative, that summary judgment is warranted because they are entitled to qualified immunity from Plaintiff's remaining due process claim. The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The threshold question in qualified immunity analysis is: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Saucier v. Katz, 533 U.S. 194, 201 (2001). A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was "clearly established." Pearson v. Callahan, 555 U.S. 223, 236 (2009) (overruling the sequence of the two-part test that required determination of a deprivation first and then whether such right was clearly established, as required by Saucier, and holding that court may exercise its discretion in deciding which prong to address first

---

[3] The Ninth Circuit's order remanding the case did not reverse this Court's finding that the mail-out appeal was unexhausted. Rather, the Ninth Circuit remanded for a determination of whether the property destruction appeal, which was pursued through a separate grievance, was exhausted or subject to improper screening.

in light of the particular circumstances of each case). Where there is no clearly established law that certain conduct constitutes a constitutional violation, a defendant cannot be on notice that such conduct is unlawful. Rodis v. County of San Francisco, 558 F.3d 964, 970-71 (9th Cir. 2009). The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Saucier, 533 U.S. at 202.

Viewing the evidence in the light most favorable to Plaintiff, the Court has determined above that Defendants' actions did not amount to a due process violation, as Plaintiff failed to raise a triable issue of fact as to (1) whether he had a property right implicating the Due Process Clause; and (2) assuming he had such a right, whether he was given the process due.

Assuming arguendo there was a constitutional violation, the Court nonetheless concludes that it would not have been clear to a reasonable officer that the destruction of the cap and shorts would be considered unlawful. As detailed above, California inmates have no constitutional right to possess property while in prison. Roth, 408 U.S. at 577; 15 C.C.R. § 3192. Further, considering that the fundamental requirements of procedural due process are notice and an opportunity to be heard, no reasonable officer would have believed he was violating Plaintiff's due process by (1) notifying him that his property would be destroyed if he did not pay the shipping costs, and (2) providing him ample time to respond. Loudermill, 470 U.S. at 542. Indeed, Plaintiff was provided almost

19

nineteen months to come up with the $6.00 shipping fee.  This is significantly more time than the thirty days provided by the PBSP Operational Procedure.  See, e.g., Neal v. Shimoda, 131 F.3d 818, 832 (9th Cir. 1997) (prison officials entitled to qualified immunity where no reasonable prison official would have reason to know that undisputed classification procedures violated due process).  Plaintiff points to no law or policy, nor is the Court aware of any, that would have put Defendants on notice that their actions would be clearly unlawful.  Accordingly, the Court finds Defendants are entitled to summary judgment on the alternative ground of qualified immunity.[4]

IV

For the foregoing reasons, Defendants' motion for summary judgment after remand (Doc. #58) is GRANTED.  The Clerk is directed to terminate any pending motions as moot, enter judgment in accordance with this Order, and close the file.

IT IS SO ORDERED.

DATED   *08/20/2014*                    _____
                                        THELTON E. HENDERSON
                                        United States District Judge

G:\PRO-SE\TEH\CR.08\Schrubb-08-2986- MSJ 2.wpd

---

[4] In his opposition, Plaintiff claims that certain defendants violated Plaintiff's right to use the United States Postal Service.  The Court does not reach Plaintiff's claim as he failed to raise the claim in his Complaint.  Nor does the Court reach Plaintiff's equal protection arguments given that the Ninth Circuit affirmed this Court's earlier grant of summary judgment on the equal protection claims.